ROBERT CARTER and wife *vs.* JOHN HARDEN.

Hancock.   Opinion December 31, 1886.

*False representations.   Husband and wife.*

Where a wife is injured by a vicious horse, which was sold to her husband as a kind animal and good family horse, she has no remedy for her injury against the seller, because of his false representations to the husband, when it does not appear that the seller understood that the horse was being

purchased for the wife, or for her use, or that he expected the wife to rely upon any representations of his to her husband.

ON REPORT.

An action of the case by husband and wife for damages for personal injuries received by the wife. The facts as found by the court are sufficiently stated in the opinion.

*B. P. Soule*, for the plaintiffs.

The principle applicable to this point is the same as decided in *Langridge* v. *Levy*, 2 M. & W. 519 Ex. Rep. or more commonly known as the gun case.

In *Langridge* v. *Levy*, the contract was made with the father of the plaintiff, on behalf of himself and his family. There was nothing to show that the defendant was aware even of the existence of the particular son injured.

In an American case, *Thomas* v. *Winchester*, 6 N. Y. 397, the case is carried further.

In support of the privity of parties, the plaintiff also cites Addison on Torts, vol. 1, p. 49; also vol. 2, pp. 398, 404, 451, and all the cases there cited.

In *Chapman* v. *Pickersgill*, 2 Wils. 145, WILMOT, C. J., says: " This action is for a tort; torts are infinitely various, not limited or confined, for there is nothing in nature but may be an instrument of mischief." If she can not sue, there is a wrong without a remedy.

*George P. Dutton*, for the defendant.

EMERY, J. The female plaintiff was riding with her husband in his wagon, drawn by his horse, which he was driving. The horse became unmanageable and ran away, throwing the female plaintiff from the wagon to her injury. In the absence of any contractual rights or obligations, she would have a right of action against that person only, whose tort was the direct proximate cause of the injury. In seeking for this cause, she goes back to the purchase of the horse by her husband from the

defendant. This purchase was made eighteen days before the injury, and at a place over twenty-five miles distant. She claims that the defendant, knowing the horse to be an unmanageable runaway, and knowing that her husband had a wife and family, yet to induce her husband to buy the horse, falsely represented it to be a safe and kind horse, and good family horse.

She does not claim there was any privity between her and the defendant in this contract. She does not claim that she thereby acquired any contractual rights against the defendant. All such rights belong to the husband. She does claim, however, that a wrong was done her by the defendant, that his deceit of her husband was a tort against her, and was the direct, proximate cause of her injury.

In support of this proposition, her counsel cites and mainly relies upon *Langridge* v. *Levy*, 2 M. & W. 519, where a son injured by the explosion of a gun sold to the father by the defendant, recovered for his injuries against the defendant. In that case, however, it was alleged and appeared that the father purchased the gun to be used by himself and his son, that the defendant knew the gun was being so purchased, and that it was to be used by the plaintiff, the son, and that he made the false representations expecting the son as well as the father to rely upon them. The action was sustained solely upon that ground, on the ground that the defendant expected the son to act upon his statements, and therefore contemplated any harm that might come to him therefrom. In the case at bar, we do not find from the evidence, that the defendant understood that the horse was being purchased for the wife, or for her use, or that he expected the wife to rely upon any representations of his. The husband was in the business of peddling sewing machines, and the defendant understood the horse was wanted for use in that business.

Baron PARKE, who pronounced the judgment in *Langridge* v. *Levy*, afterward in *Longmeid* v. *Holliday*, 6 Exch. 766, said that the principle of the former case was that if any one knowingly tells a falsehood, with intent to induce another to do an act which results in loss, he is liable to that person in an action

of deceit. To bring this case at bar within that principle, it should appear that the defendant made the false representations with the intent to induce the wife to act upon them. The evidence fails to show any representations made with that intent.

This case is more similar to *Winterbottom* v. *Wright*, 10 M. & W. 109, than to *Langridge* v. *Levy*. In *Winterbottom* v. *Wright*, the defendant had contracted with the Post Master General to provide for a certain post route, mail coaches of suitable strength, etc. A third party contracted to horse the coaches along the same route, and employed the plaintiff as one of his drivers. The plaintiff was injured by some defect in the coach, the fault of the defendant. It was held that plaintiff could not recover against the defendant. The case of *Langridge* v. *Levy*, was expressly distinguished. ALDERSON, B., said: " The principle of that case was simply this, that the father having bought the gun for the very purpose of being used by the plaintiff, the defendant made representations by which he was induced to use it." Lord ABINGER, C. B., in the same case said : " We ought not to attempt to extend the principle of that decision, which, although it has been cited in support of this action, wholly fails as an authority in its favor, for there the gun was bought for the use of the son, who could not make the bargain himself, but was really and substantially the party contracting." In *Blakemore* v. *Bristol & Exeter R'y Co.* 8 El. & B. 1035. COLERIDGE, J., said : " It has always been considered that *Langridge* v. *Levy* was a case not to be extended in its application."

In the case *Thomas* v. *Winchester*, 6 N. Y. 397, cited by plaintiff, the act of the defendant was shown to be the direct proximate cause of the injury to the plaintiff. The act of the defendant was the carelessly labelling a deadly poison as a harmless medicine, and putting it on the market as such. Such an act was a tort directly against any person, who should, on the strength of the label, purchase and use the compound as a medicine. The plaintiff did rely upon the label, and used the compound to his injury. It was like the case of the squib thown into the market place. The thrower was liable to whatever

person was finally struck and hurt by it.    Chief Justice RUGGLES, in the opinion, expressly distinguishes the case from *Winterbottom v. Wright*, which he cites with approval.

In the case at bar, the alleged cause is evidently too remote, in time, place and sequence, to be the direct, proximate cause of the plaintiff's injury, and she has not shown that the defendant told any falsehood with the intent that she should act upon it.

*Plaintiffs nonsuit.*

PETERS, C. J., WALTON, DANFORTH, FOSTER and HASKELL, JJ., concurred.