# Susan Maguire, Plff. in Err., v. Michael McGee.

Where the employees of a contractor for the brick work of a building erect (not because expressly required by the contract but in order to enable them to do the work) a scaffold at a great height, the contractor is not liable in damages for the death of a painter employed by the owner of the building, who is killed while passing over the scaffold, for his own convenience, by the slipping of a putlog carelessly placed, and the consequent fall of the scaffold to the ground.

(Argued March 26, 1888. Decided April 23, 1888.)

January Term, 1888, No. 201, E. D. All the Judges present. Error to Common Pleas No. 2 of Philadelphia County to review a judgment of compulsory nonsuit in an action of trespass on the case for negligence, June Term, 1885, No. 682. Affirmed.

This was an action by Susan Maguire, who sued as well in her own right as widow of John Maguire, deceased, as on behalf of Mary Maguire, and others, children of the said Susan Maguire and the said John McGuire, deceased, against Michael McGee.

The plaintiff declared in the usual form against Michael McGee, claiming damages for the negligent failure of the defendant as contractor, having charge of the construction of the brick work and scaffolding of a building about which the plaintiff's husband was employed, to provide a safe scaffold for the use of persons having business about the premises, by reason of which negligence the plaintiff's husband, being lawfully upon the said scaffold, was killed.

The plea was "Not guilty."

At the trial the following facts appeared:

In the summer of 1884 work was being done upon the Church of the Gesu, at Seventeenth and Stiles streets, in the city of Philadelphia.

Cited in Roddy v. Missouri P. R. Co. 104 Mo. 234, 12 L. R. A. 749, 24 Am. St. Rep. 333, 15 S. W. 1112.

NOTE.—As to vice principalship as determined with reference to the character of the act which caused the injury, see the exhaustive review of authorities relating to the various phases of the subject in note to Lafayette Bridge Co. v. Olsen, 54 L. R. A. 33.

Michael McGee, the defendant, was the contractor for the construction of all the walls, brick work, etc., and, as incidental thereto, erected the scaffolds.

The work, other than that included in the defendant's contract, was done under the direction of Superintendent William Welsh, employed by the trustees of the church.

All the workmen employed in the work, whether employed by McGee or Welsh, used the scaffolds to pass from one part of the building to the other. Indeed, these scaffolds were the only means of transit through and about the building.

John Maguire was a laborer, not in the employ of the defendant McGee, but engaged in general work under the direction of Superintendent Welsh.

On the afternoon of August 14, 1884, Maguire was engaged in painting some crib work in the upper part of the building. The 6 o'clock bell ringing, he stopped, and started to walk along the scaffold, which was about 30 feet above the ground, to a ladder, by which he might descend. While so walking he stepped upon what proved to be a trap in the scaffold, and was let fall through the scaffold a distance of about 30 feet, receiving injuries from which he died before morning.

The trap was made in this way: There was a well hole of about 8 feet in diameter, surrounded by a brick wall; across the top of the wall and fastened in there was placed a 3x6-inch beam, running across the diameter of the hole; on that rested 3x4-inch beams, one end of these beams being on the larger beam and the other on the circumference of the brick wall. On these were placed boards.

One of the smaller beams, having no fastening at either end and having only a purchase of an inch or two on the bricks, slipped from its place. When Maguire stepped on the boards there was no support for his weight, the board tilted, and he went through.

The judge who tried the case entered a nonsuit which the court below subsequently refused to take off.

The assignment of error specified the action of the court below in discharging the rule to take off the nonsuit.

*Richard C. Dale,* for plaintiff in error.—He who erects a structure is bound to erect one which will be reasonably safe for use by all persons who may be fairly expected to be upon

it in the course of their lawful business. It ought to have been within the contemplation of the defendant when he erected these scaffolds, that they would be used by all the workmen who were engaged in the building; and this being so, he was under as much obligation to provide a safe scaffold for them as for his own workmen.

In Gillis v. Pennsylvania R. Co. 59 Pa. 129, 98 Am. Dec. 317, where the court held that the railroad company was not liable for injuries caused by the fall of a platform which broke under a crowd gathered to see the President pass the station, Mr. Justice SHARSWOOD says of the plaintiff therein: "Had it been the hour for the arrival or departure of a train, and he had gone there to welcome a coming or speed a parting guest, it might very well be contended that he was there by the authority of defendants, as much as if he was actually a passenger; and it would then matter not how unusual might have been the crowd, the defendants would have been responsible. As to all such persons to whom they stood in such relation as required care on their part, they were bound to have the structure strong enough to bear all who could stand on it."

*John G. Johnson,* for defendant in error.—A brick layer whose workmen construct a platform for their use in laying the bricks is not liable for an injury to a person who strays from a safe passage way and walks upon it, if it be not so constructed as to be safe to walk upon.

Even as between a master and servant, where there is a duty owing by the former to the latter, it is not required of the master that he should keep a building in course of erection by him, at all stages of the work, in a safe condition. Armour v. Hahn, 111 U. S. 318, 28 L. ed. 442, 4 Sup. Ct. Rep. 433.

In the present case the putlog was not fastened at the moment of the accident, but as soon as another layer of bricks could have been laid it would have been solidly fastened into the wall itself.

Neither the church nor its employees had any right to demand that McGee should construct a passage way. His workmen made the platform, not as a passage way, but for their own purposes. For such use it was proper. They were not bound to anticipate the possibility that it might be used as a passage way, and to make it safe for such purpose.

In Gillis v. Pennsylvania R. Co. 59 Pa. 143, 98 Am. Dec.

317, the railroad company knew that the timbers of the platform were rotten, and that persons who stood on it might break through and be injured. The question this court asked was not, Was there a "trap"? but, Was there a duty to make the platform safe for persons who, for their own pleasure, might happen to use it? So far as concerned mere licensees—persons permitted to be upon the platform—it was held that there was no duty.

In Anderson v. Scully, 31 Fed. 162, the owner of a scow, the hatches of which were not safe, permitted others to cross it for their own purposes. He was held not responsible.

The difference in the legal position of a person who enters by invitation, express or implied, and of one who is a mere licensée, is that in order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled. Sweeny v. Old Colony & N. R. Co. 10 Allen, 372, 87 Am. Dec. 644.

The general rule or principle applicable to this class of cases is that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement, or inducement, either express or implied, by which they have been led to enter thereon. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident.

The same distinction was taken in Hounsell v. Smyth, 7 C. B. N. S. 738, and Gautret v. Egerton, L. R. 2 C. P. 375.

In Gramlich v. Wurst, 86 Pa. 75, 27 Am. Rep. 684, these English cases were favorably quoted.

PER CURIAM:

It is too clear for argument that McGee cannot be held for the accident which befell John Maguire. The scaffolding was necessarily of a temporary character, erected by the defendant's employees for their own purposes; and had one of them been injured by it, he could not have recovered from his employer; much less, therefore, can he be held for an injury to a stranger, to whom he owed no duty whatever.

The judgment is affirmed.